Dennis WELLS, Petitioner,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.

No. 85–845.

District of Columbia Court of Appeals.

Submitted May 28, 1986.
Decided July 31, 1986.

---

Dennis Wells, pro se.

N. Denise Wilson-Taylor, Washington, D.C., for respondent.

Before NEBEKER, NEWMAN, and FERREN, Associate Judges.

FERREN, Associate Judge:

Petitioner, Dennis Wells, left the military in December 1981. Respondent, Department of Employment Services (DOES), denied his May 1982 claim for unemployment compensation under the 1981 federal statute applicable to ex-servicemembers. Congress amended the law in October 1982, and Wells reapplied for compensation in December 1982. DOES granted his second claim for benefits, but only for unemploy-

ment after the December date he filed his second claim. Wells contends: (1) under proper interpretation of the 1981 federal statute, he did not voluntarily leave the service and thus is entitled to unemployment compensation based on his first claim; (2) alternatively, the 1982 amendment applies retroactively to the date he filed his first claim; (3) alternatively, DOES should have backdated his second, December claim to the October effective date of the 1982 amendment. Because DOES has not adequately addressed the question of its authority to backdate claims, as required by our first remand order in this case, we must reverse and remand, once again, for further proceedings.

I.

Wells was honorably discharged on December 1, 1981 after completing his first full term of active service with the United States Army as a Judge Advocate General Corps officer. On May 2, 1982 he filed a claim with DOES for UCX benefits (unemployment compensation based on prior military service). The claims deputy denied Wells' claim on the ground he had resigned or voluntarily left the service. 5 U.S.C. § 8521(a)(1)(B)(ii) (Supp. V 1981) (as amended by Pub.L. 97–35, effective Aug. 13, 1981) ("1981 Act").[1] Congress further amended this statute a year later and, among other things, removed the prohibition against unemployment benefits for ex-servicemembers who had resigned or voluntarily left the service. 5 U.S.C. § 8521(a)(1) (1982) (Pub.L. 97–362 § 201, effective October 25, 1982) ("1982 Act").[2]

---

1. Under federal law, anyone performing "federal service" including military personnel, is entitled to unemployment compensation. 5 U.S. C.A. §§ 8501–25 (1967 & 1986 Supp.). From August 13, 1981 to October 25, 1982, 5 U.S.C. § 8521(a)(1)(B) (Supp. V 1981) (Pub.L. 97–35 § 2405(a)), provided that "federal service" included active service in the armed forces if

 (B) with respect to that service, the individual—

 . (i) was discharged or released under honorable conditions;

 (ii) did not resign or voluntarily leave the service; and

 (iii) was not released or discharged for cause as defined by the Department of Defense.

2. 5 U.S.C. § 8521(a)(1) (1982) (Pub.L. 97–362 § 201, effective October 25, 1982) now provides:

 (a) For the purpose of this subchapter—

 (1) "Federal service" means active service (not including active duty in a reserve status unless for a continuous period of 180 days or more) in the armed forces or the Commis-

Wells accordingly filed another claim for benefits on December 17, 1982.

At an interstate hearing, Wells stressed his eligibility for benefits under the 1981 Act. He testified that he did not re-enlist or seek retention because he understood through "the grapevine" that if the Army wanted to retain his services, a supervisor would informally request him to re-enlist. No one asked him to do so. Accordingly, Wells thought that the Army no longer wanted his services and that his request for re-enlistment would be denied.[3] He added that, if he had been approached, he would have desired to stay for another year but not for another tour of three or four years. He further testified that he did try to re-enlist in November 1982, eleven months after his discharge (and after DOES had denied his first claim). The Army, however, turned him down. In short, Wells argued that even if he had asked to re-enlist, his request would have been denied; his separation, therefore, had not been voluntary.

After reviewing the record and a tape of the hearing, the appeals examiner expressly addressed only Wells' second claim, under the 1982 Act, and found Wells eligible for benefits. As a consequence, Wells received nine weeks of unemployment compensation during the period between December 17, 1982, the date he filed his second claim, and March 1, 1983, the date he obtained new employment.[4]

Wells petitioned this court for review of the agency's determination. Because DOES had failed to determine whether Wells voluntarily had left the service within the meaning of the 1981 Act, *supra* note 1, and also had failed to determine whether the 1982 amendments could have retroactive effect, we remanded for DOES to determine:

(1) Whether Wells' leaving was "voluntary" under the 1981 Act;

(2) Whether Wells was required to file a new claim to obtain benefits under the 1982 Act;

(3) Whether, and to what extent, the benefits of the 1982 Act are conferred retroactively; and

(4) Whether the 13–week limitation on benefits in the 1982 Act, 5 U.S.C. § 8521(c)(2) (1982), applied to this case.

*Wells v. District of Columbia Department of Employment Services*, 473 A.2d 388 (1984) (unpublished memorandum opinion and judgment).

On remand, without holding another hearing, DOES concluded, first, that under the 1981 Act Wells voluntarily left the service because he did not make an effort to re-enlist at the time of his separation; thus, he had no right to benefits under the 1981 Act. Second, DOES concluded that, to be eligible for benefits under the 1982 Act, Wells had to file a new claim on or after October 31, 1982, which he did on December 17, 1982. Third, because Wells was honorably discharged after his first full

---

sioned Corps of the National Oceanic and Atmospheric Administration if with respect to that service—

(A) the individual was discharged or released under honorable conditions (and, if an officer, did not resign for the good of the service); and

(B) (i) the individual was discharged or released after completing his [or her] first full term of active service which the individual initially agreed to serve, or

(ii) the individual was discharged or released before completing such term of active service—

(I) for the convenience of the Government under an early release program,

(II) because of medical disqualification, pregnancy, parenthood, or any service-incurred injury or disability,

(III) because of hardship, or

(IV) because of personality disorders or inaptitude but only if the service was continuous for 365 days or more;

3. Upon his separation from the Army, however, Wells was classified RE–1, which meant he was eligible to re-enlist.

4. We note that there were ten weeks between December 17, 1982 and March 1, 1983. Apparently, DOES applied the District's one-week waiting period. D.C.Code § 46–110(5) (1981); 18 D.C.R.R. § 4604.18 (1983). Wells does not question the applicability of this waiting period.

term of active service, DOES determined that he was entitled to benefits under the 1982 Act. Fourth, DOES concluded the 1982 Act did not apply to any period of unemployment before October 31, 1982 and thus could not confer benefits retroactively to Wells' first (May 1982) application. Fifth, DOES held that the 1982 Act imposed a 13–week limit on benefits; however, Wells was entitled to only nine weeks of benefits because DOES lacked authority to backdate his claim to cover a period of unemployment before the date of his second claim. In short, on remand, DOES affirmed its denial of benefits on Wells' claim under the 1981 Act and also affirmed its award of benefits for nine weeks on his claim under the 1982 Act, since eligibility accrued no sooner than the date that claim was filed, December 17, 1982.

## II.

 Wells contends he did not voluntarily leave the service within the meaning of the 1981 Act. *Supra* note 1. He acknowledges the Senate Committee on Finance report on the 1981 Act which states, in part: "The committee amendment would disqualify for unemployment compensation benefits those exservicemembers who voluntarily leave the service and refuse to re-enlist, effective July 1, 1981." 1981 U.S. CODE CONG. & AD.NEWS 396, 700. But he infers from this language that Congress intended by the 1981 Act to disqualify only those military personnel who either actively petition to terminate their services or who refuse explicit offers to re-enlist. He argues that he did neither. His tour of duty simply ended, without an invitation to re-enlist; thus, in effect, he argues he was in a quit-or-be-fired situation, citing *Thom-*

*as v. District of Columbia Department of Labor*, 409 A.2d 164 (D.C.1979) (resignation in lieu of imminent discharge is not voluntary termination).

DOES interpreted the statute differently: under the 1981 Act, military personnel who complete their terms of active service, are eligible for re-enlistment, and do not ask to re-enlist at the time of separation have voluntarily left the service and thus are not entitled to benefits.

The legislative history of the 1981 Act supports DOES' interpretation. The House Conference Report on the 1981 Act states that the conference agreement adopted "[t]he Senate provision [that] disqualifies for unemployment compensation those ex-servicemembers who leave the military at the end of a term of enlistment and are eligible to reenlist." 1981 U.S. CODE CONG. & AD.NEWS 396, 1357.[5]

There is no dispute that Wells left the military and did not even attempt to re-enlist at the end of his term, even though he was eligible to do so. *Supra* note 3. Given his eligibility, therefore, it is irrelevant that no one explicitly invited Wells to re-enlist. Nor, of course, did anyone tell him he could not re-enlist despite his eligibility. *Compare Phares v. Commonwealth*, 85 Pa.Commw. 475, 482 A.2d 1187 (1984) (Air Force specialist who was eligible for re-enlistment but told before discharge he could not re-enlist; appeal held untimely). In short, absent an effort to re-enlist, his termination did not approach a quit-or-be-fired situation as in *Thomas.*

Nor is it relevant that Wells did try to re-enlist eleven months after he had left the service but was rejected, since by that time his effort to rejoin the Army was akin

---

5. There is evidence that the Senate intended by the 1981 Act to move toward the states' standards for voluntary leaving. The Senate Committee on Finance reported:

 *Eliminate benefits for those who voluntarily quit military service.*—Under existing law, a servicemember can quit the military and still be eligible for federally financed unemployment compensation benefits. By contrast, every State provides for the disqualification of

civilians who voluntarily leave their jobs, are discharged for misconduct, or refuse an offer of suitable work.

 The committee amendment would disqualify for unemployment compensation benefits those exservice members who voluntarily leave the service and refuse to re-enlist, effective July 1, 1981.

1981 U.S.CODE CONG. & AD.NEWS 396, 700.

to applying for a new job, not for continuation of existing employment.

Accordingly, DOES properly interpreted the law, and there is substantial evidence supporting its conclusion that Wells voluntarily left the service and thus was not entitled to benefits under the 1981 Act.

### III.

■ Wells further contends that the 1982 Act applied retroactively to all military unemployment after July 1, 1981. DOES interprets the 1982 Act to apply to all persons who left the service after July 1, 1981 but only to unemployment on or after October 31, 1982 and then for a maximum period of 13 weeks.[6]

DOES is essentially correct. *But see supra* note 6. In the 1982 Act, Pub.L. 97–362 § 201(c) (5 U.S.C. § 8521 (1982) (historical and revision notes)), Congress provided that:

> (1) *In general.*—Except as provided in paragraph (2), the amendments made by this section ..., shall apply with respect to terminations of service on or after July 1, 1981, but only for purposes of determining eligibility for benefits for weeks of unemployment beginning after the date of the enactment of this Act [Oct. 25, 1982].
>
> (2) *Transitional Rule.*—The amendments made by this section shall not apply to the extent that such amendments would (but for this paragraph) reduce the amount of compensation payable in the case of benefit years established before the date of the enactment of this Act [Oct. 25, 1982].

Congress further provided in the 1982 Act, 5 U.S.C. § 8521(c)(2) (1982) that:

The aggregate amount of compensation payable on the basis of Federal service ... to any individual with respect to any benefit year shall not exceed 13 times the individual's weekly benefit amount for total employment.

The plain meaning of § 201(c), coupled with § 8521(c)(2), is that military personnel who left the service after July 1, 1981 are entitled to unemployment compensation under the 1982 Act only for unemployment after October 25, 1982, and then only for thirteen weeks after October 25, 1982, unless under prior law the ex-servicemember was entitled to greater compensation. Under prior law, Wells was entitled to no compensation. *Supra* Part II. Thus, under the 1982 Act Wells was not entitled to compensation for unemployment before October 25, 1982.

### IV.

■ We asked DOES, on remand, to determine whether Wells was required to file a new claim to obtain benefits under the 1982 Act. DOES answered in the affirmative. We defer to the agency's expertise in administering unemployment compensation insurance. *Goto v. District of Columbia Board of Zoning Adjustment,* 423 A.2d 917, 924 (D.C.1980) ("Administrative determinations regarding an agency's internal procedures are entitled to due respect and should not be reversed unless 'clearly wrong.'"). Accordingly, we accept DOES' conclusion that Wells had to reapply for benefits under the 1982 Act (without having to resolve whether the commencement date is October 26 or 31, 1982, *supra* note 6).

---

**6.** The 1982 Act applies to weeks of unemployment beginning after its effective date, October 25, 1982. Pub.L. 97–362 § 201(c) (5 U.S.C. § 8521 (1982) (historical and revision notes)). The only reason we can think of for DOES' conclusion that a claim could not have been filed before October 31, 1982 is its application of the one-week waiting period under local law. *Supra* note 4. (Because October 31, 1982 was a Sunday, we assume DOES actually concluded claims could be filed no earlier than November 1, the seventh day after October 25. Or, perhaps, DOES erroneously believed the count could begin with October 25 itself.) Because this one-week difference is immaterial here, we do not decide whether DOES' position is sustainable.

### V.

Finally, Wells contends that if, under the 1982 Act, he is entitled to benefits only for unemployment after October 25, 1982, he is nonetheless entitled to an additional seven weeks of benefits for the period between October 25, 1982 and December 17, 1982, the date he reapplied for benefits.[7] DOES argues, however, that it has no statutory or regulatory authority to backdate claims; therefore, Wells is entitled to benefits only for the period between December 17, 1982 and March 1, 1983.

We reverse the agency's decision and remand the case for further proceedings. Wells, who relies exclusively on federal law, has not persuaded us that DOES has authority to backdate UCX claims—a matter of local, not federal, law.[8] But DOES has supplied no analysis whatsoever, just an asserted lack of authority, despite a statutory scheme which suggests that backdating may be authorized in view of the caselaw in other jurisdictions. We therefore choose to remand for DOES to provide a reasoned interpretation for us to consider in light of that agency's expertise and experience in administering the statute.

DOES cites no authority supporting its assertion that it may not backdate claims to cover a period of eligibility. The most directly relevant statutory provision, D.C. Code § 46–101(8) (1981), defines " '[b]enefit year' with respect to any individual [to mean] the 52 consecutive-week period be-ginning with the 1st day of the 1st week *with respect to which* the individual first files a valid claim for benefits." (Emphasis added.) Furthermore, D.C.Code § 46–110 (1981) provides, in part:

> An unemployed individual shall be eligible to receive benefits *with respect to* any week only if it has been found by the Board:
>
> (1) That he [or she] has made a claim for benefits *with respect to* such week in accordance with such regulations as the Council of the District of Columbia may prescribe; [9] [Emphasis added.]
>
> * * * * * *
>
> (5) That he [or she] has been unemployed for a waiting period of 1 week....

Finally, DOES' own regulation, D.C.R.R. § 4604.4 (1983), provides:

> The term "claim" means an application by a claimant for the determination of eligibility for benefits, benefit amount, and duration of benefits which *certifies to the beginning date of a period of unemployment.* [Emphasis added.]

DOES apparently interprets these provisions to mean a claimant should be compensated for unemployment beginning only with the week a claim is filed (after a one-week waiting period). Perhaps the agency takes this position because the statute does not clearly say otherwise and there is no express provision permitting DOES to excuse a late filing. *Compare*

---

**7.** Wells received nine weeks of benefits for the period between December 17, 1982 and March 1, 1983. If his claim were backdated to October 25, 1982, to provide additional benefits, he would be compensated for fifteen or sixteen weeks of benefits. *Supra* notes 4 and 6. This would exceed the thirteen-week maximum in 5 U.S.C. § 8521(c)(2) (1986 Supp.). *See Hill v. Cantrell,* 769 F.2d 218 (4th Cir.1985) (Congress specifically intended to limit military unemployment compensation to thirteen weeks, even though other federal employees are eligible for extended federal supplemental compensation). Accordingly, Wells at most can argue for backdating limited to four additional payments.

**8.** There is no dispute that local law as to the administrative procedure for filing and deter-mining claims applies to military unemployment cases, even though the applicable substantive law is federal law. *Compare Phares v. Commonwealth,* 85 Pa.Commw. 475, 482 A.2d 1187 (1984) (applies local law as to time limits for appeal of military unemployment case) *with Newton v. Industrial Commission of Utah,* 706 P.2d 1058 (Ut.1985) (federal law limiting military unemployment compensation effectively preempts more generous local laws).

**9.** *See* D.C.Code § 46–112(a) (1981) ("Claims for benefits shall be made in accordance with such regulations as the Council of the District of Columbia may prescribe").

D.C.Code § 46–110(4) (1981).[10] That interpretation, however, is not necessarily compelling. The statutory words "with respect to which," § 46–101(8), could reasonably be interpreted to mean that a claimant may file for benefits pertaining to a period of unemployment beginning earlier than the week the claim is filed. Indeed, DOES' interpretation would flow more naturally from the definition of "benefit year," § 46–101(8), if those four words had been omitted. Moreover, DOES regulation 18 D.C.R.R. § 4604.4 permits a claim "which certifies to the beginning date of a period of unemployment," without express limitation to the period beginning with the week the claim is filed (after a one-week waiting period).

Other jurisdictions, interpreting statutes and regulations similar to our local unemployment compensation scheme, permit the agency to backdate claims to cover a period of eligibility when a claimant can show good cause of various sorts for delaying the application. New Jersey, for example, has interpreted its statutory definition of benefit year to permit the agency to backdate [11] and has created a presumption that a late claim should be accepted and backdated when the tardiness is a consequence of misinformation supplied by the administrative agency. *Meaney v. Board of Review,* 151 N.J.Super. 295, 299, 376 A.2d 1253, 1255 (App.Div.1977).

Pennsylvania also has interpreted its statute to authorize its unemployment compensation agency to regulate backdating of claims. *Edwards v. Commonwealth,* 57 Pa.Commw. 397, 398, 426 A.2d 237, 238 (1981); *Kear v. Commonwealth,* 40 Pa. Commw. 346, 348, 397 A.2d 468, 470 (1979) (en banc). Pennsylvania, however, is less liberal than New Jersey. Its courts have sustained regulations that permit backdating when a tardy filing is caused by the agency's gross negligence or wilful and wanton misrepresentation amounting to fraud, but not where the agency's action is mere error or mistake. *Id.* at 469. Moreover, Pennsylvania courts have sustained regulations that altogether prohibit backdating when tardy filing is attributable to the claimant, not to misleading actions by the agency. *Edwards* (regulations prohibiting backdating, even when tardiness results from illness or incapacity, not unreasonable); *Snipas v. Commonwealth,* 43 Pa.Commw. 129, 401 A.2d 888 (1979) (where agency has not misled claimant and claimant chose not to file, although aware of eligibility, claim will not be backdated).

In New York, however, the agency may backdate a claim whenever the claimant demonstrates good cause for the delay; for example, when the claimant is ill or disabled or the agency has misled the claimant. *Beck v. Ross,* 72 A.D.2d 867, 421 N.Y.S.2d 718 (1979); *Zenn v. Levine,* 50 A.D.2d 700, 375 N.Y.S.2d 447 (1975); *Pineau v. Catherwood,* 24 A.D.2d 782, 263 N.Y.S.2d 594 (1965); *Moorehead v. Catherwood,* 24 A.D.2d 663, 261 N.Y.S.2d 235 (1965); *In re Silver's Claim,* 15 A.D.2d 839, 224 N.Y.S.2d 941 (1962); *In re David-*

---

**10.** D.C.Code § 46–110(4) (1981) provides that an unemployed individual is eligible to receive benefits only if the Board finds:

That he [or she] is available for work and has registered and inquired for work at the employment office designated by the Board, with such frequency and in such manner as the Council of the District of Columbia may by regulation prescribe: *Provided, that failure to comply with this condition may be excused by the Board upon a showing of good cause for such failure;* and the Council of the District of Columbia may by regulation waive or alter the requirements of this subsection as to such types of cases or situations with respect to which it finds that compliance with such requirements would be oppressive or would be inconsistent with the purposes of this chapter; [Emphasis added.]

**11.** The New Jersey statute provides that " ' "[b]enefit year" with respect to any individual means 364 consecutive calendar days beginning with the day on, *or as of* which he [or she] first files a valid claim for benefits.' " *Meaney v. Board of Review,* 151 N.J.Super. 295, 299, 376 A.2d 1253, 1255 (App.Div.1977) (quoting *N.J.S.A.* 43:21–19(d)) (emphasis in original). *Compare* D.C.Code § 46–101(8) (1981) ("beginning with the 1st day of the 1st week *with respect to which* the individual first files a valid claim for benefits") (emphasis added).

*son,* 12 A.D.2d 713, 208 N.Y.S.2d 1022 (1960).

The caselaw from New Jersey, Pennsylvania, and New York, construing statutory language similar to the District's Unemployment Compensation Act, makes clear that DOES' bald assertion of absolutely no authority to backdate claims may be incorrect. At least, we have no indication that DOES, which has presented no analysis whatsoever, has thoroughly considered and resolved that question. Absent an analysis staking out an agency position to which this court normally would accord some deference, we cannot agree at this time that DOES lacks authority to backdate claims. On the other hand, we should not resolve that complex issue without the benefit of a reasoned interpretation by the agency charged with administering the statute.

Nonetheless, because Wells has failed to proffer any reason for the month-and-a-half delay in filing his second claim (under the 1982 Act), we confront the question whether his claim should fail even if we assume DOES does have backdating authority. Underlying this question, however, is an assumption that DOES would not, as a matter of fairness credit Wells with timeliness based on his first claim (under the 1981 Act) five months before the 1982 Act took effect, even though, as it turned out, he was legally required to refile under the new Act. The question also assumes that DOES, like other jurisdictions, would require a sound reason why the claim (under the 1982 Act) was not promptly filed. It is not for us to rule on the basis of such assumptions. This court is not in a position to deal in the first instance with a question—premised also on an unresolved assumption about backdating authority—that is inherently a matter of agency regulation. *See* D.C.Code § 46–110(1) (1981); *id.* § 46–112(a), *supra* note 9; *accord Edwards; Kear.* Accordingly, we reverse and remand, once again, so that DOES can thoroughly explain (1) whether it has authority to backdate claims; (2) if so, what criteria govern the acceptance of late-filed claims; and (3) the application of DOES' analysis to petitioner Wells.

*Reversed and remanded.*