[No. B047883. Second Dist., Div. Three. Nov. 19, 1990.]

CHENG T. WANG, Plaintiff and Appellant, v.
CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS
BOARD, Defendant and Respondent.

COUNSEL

Cheng T. Wang, in pro. per., for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Charlton G. Holland, Assistant Attorney General, Anne S. Pressman and Carol P. Wallacker, Deputy Attorneys General, for Defendant and Respondent.

OPINION

KLEIN, P. J.—Plaintiff and appellant Cheng T. Wang (Wang) appeals a judgment denying his petition for writ of mandate (Code Civ. Proc., § 1094.5) by which Wang sought to set aside a decision by defendant and respondent California Unemployment Insurance Appeals Board (the Board) denying his request to backdate a claim for benefits.

The essential issue presented by Wang's argument is whether the lack of an advisement by an employer to an employee regarding the right to file for unemployment benefits excuses an employee's failure to file a timely claim for benefits.

The lack of such advisement does not provide good cause for a delayed filing because an employer has no affirmative duty to advise a discharged employee in this regard. However, an employee's unawareness of the right to seek unemployment benefits due to any number of reasons may provide good cause for a reasonable delay in filing a claim. Because Wang failed to show good cause for his two-year delay in filing for benefits, the judgment is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 29, 1987, California State University, Long Beach (CSULB), discharged Wang, the holder of a Ph.D. degree, from his position as associate professor of electrical engineering. At the time of his discharge, Wang was not notified by CSULB of any unemployment benefit rights.

Nearly two years later, on May 18, 1989, Wang applied for unemployment benefits and asked that his claim be backdated to May 24, 1987. On May 19, 1989, citing Unemployment Insurance Code section 1253,

subdivision (c),[1] the California Employment Development Department (EDD) advised Wang he was ineligible for benefits because he had not established good cause for failing to comply with the regulations, which required him to report during the Monday through Friday following the requested effective date of May 24, 1987. On June 8, 1989, the EDD sent Wang a corrected notice of determination, basing its denial on section 1253, subdivision (a).[2]

Wang appealed the EDD's denial. At the administrative hearing, Wang testified he did not file a claim for unemployment benefits in 1987 because he had not been notified of any such rights by CSULB and therefore his late filing should be excused. Although he had resided in this country for 11 or 12 years, he first learned of unemployment benefits in August 1988, when his sister-in-law was laid off from her job. Wang then started "getting ideas" about unemployment benefits, but he assumed benefits were available only for people who had been laid off, not for people who had been discharged. Wang adhered to this belief even though he knew he was not an expert on the subject. On September 20, 1988, he made a phone call to the EDD to ask whether he could file a claim. Wang told the EDD employee that currently he was working full-time performing research. The EDD employee responded that Wang could not file for benefits.

Wang ultimately filed for benefits nine months later on May 18, 1989, after he learned of a wrongfully discharged Southern California Rapid Transit District employee who obtained unemployment benefits.

Following the administrative hearing, the administrative law judge (ALJ) concluded Wang had procrastinated and had not established good cause for backdating his claim.

Wang appealed the ALJ's decision to the Board. The Board essentially adopted the ALJ's findings and found the facts as follows: At the time Wang was terminated, he believed he was ineligible for unemployment benefits because he had been discharged rather than laid off due to a lack of work. Although Wang did not purport to be an expert in unemployment insurance law, he did not contact the EDD in 1987, nor did he make inquiries of the CSULB vice-president in charge of faculty and staff relations. On September 20, 1988, Wang called the EDD, stated he was working full-time, and asked if he could collect unemployment benefits. The

---

[1] All further statutory references are to the Unemployment Insurance Code unless otherwise specified.

[2] Section 1253, subdivision (a), provides an individual is eligible to receive unemployment compensation benefits for any week only if a claim for benefits with respect to that week has been made in accordance with authorized regulations.

EDD employee told Wang he was ineligible because unemployment benefits are for the unemployed. According to Wang, the EDD employee also told him he could not file for benefits. During this time, Wang had been working full-time at his own research company. In May 1989, Wang learned of a bus driver who had been discharged and had obtained unemployment benefits, and Wang then filed a claim.

The Board found this state of the record disclosed a lack of good cause to backdate the claim to May 24, 1987, and upheld the ALJ's denial of benefits. The Board concluded Wang had not been harmed by CSULB's failure to make informational materials available to him as to any unemployment benefit rights because he knew of the existence of the unemployment insurance program and had failed to report to the EDD and file a claim for benefits. Wang did not do so "because he determined purely on his own initiative that he would not be eligible for benefits."[3]

On October 10, 1989, Wang filed a petition for writ of administrative mandamus in the superior court challenging the Board's decision, and reiterating his contentions. The Board contended the weight of the evidence supported denial of allowing a backdated claim. It maintained Wang knew of the existence of benefits and had made the legal determination he was ineligible, and his preoccupation with other matters did not excuse his failure to inquire as to his benefit rights. Even assuming CSULB had failed to provide Wang with information relating to unemployment benefits, the Board argued Wang was not relieved of all responsibility for contacting the EDD directly for so long a period of time.

Following argument on the matter, the trial court denied the petition. Wang appealed.

## CONTENTIONS

Wang contends (1) there exists good cause to support backdating of his claim because CSULB's failure to advise him of his benefit rights outweighs his delay in filing a claim for benefits; and (2) the administrative regulations should be liberally construed to reduce the hardship of the unemployed.

---

[3] The Board modified the ALJ's decision, however, to allow Wang to request the EDD to determine his entitlement to backdate a claim to September 20, 1988. On September 26, 1989, Wang contacted the Torrance EDD office and requested that he be permitted to file a claim effective September 18, 1988. On October 11, 1989, the EDD issued a determination permitting Wang to file a claim effective September 18, 1988. Thus, the late filing issue relative to Wang's September 1988 claim is not before us.

## DISCUSSION

### 1. *Statutory and regulatory scheme.*

Section 1253 provides: "An unemployed individual is eligible to receive unemployment compensation benefits with respect to any week only if the director finds that: [¶] (a) A claim for benefits with respect to that week has been made in accordance with authorized regulations. [¶] (b) He has registered for work, and thereafter continued to report, at a public employment office or such other place as the director may approve . . . . [¶] (c) He was able to work and available for work for that week. [¶] (d) He has been unemployed for a waiting period of one week as defined in Section 1254. [¶] (e) He conducted a search for suitable work in accordance with specific and reasonable instructions of a public employment office."[4]

The regulations permit delayed filing of a claim for good cause. California Code of Regulations, title 22, section 1253-8 provides: "A week of unemployment of an individual who *for good cause*, delays filing his or her *new* . . . claim shall be the week in which he or she first becomes unemployed. Thereafter his or her week(s) shall consist of seven-consecutive-day periods, as defined in Section 1253-1 of these regulations, commencing immediately after the initial week. (See . . . Section 1326-10 of these regulations for interpretation of 'good cause'.)" (Italics added.)

California Code of Regulations, title 22, section 1326-10, the key regulation here, states: "(a) The department shall, at the request of the claimant, extend the period prescribed for the filing of a *new,* . . . claim, or the period within which to register for work, . . . , if the department finds that the failure of the individual to file any such claim or to register for work within the prescribed time *was due to good cause, including, but not limited to, any of the following*: [¶] (1) Failure on the part of the employer with respect to *partial* unemployment benefits to comply with any of the provisions of Sections 1326-7 and 1326-9 of these regulations. [¶] (2) His or her employer warned, instructed or coerced him or her to prevent the prompt filing of such claim, or his or her registration for work. [¶] (3) He or she reasonably relied on misleading, incomplete or erroneous advice given to him or her by personnel of the department, . . . : [¶] . . . . [¶] (4) Failure by the department to discharge its responsibilities promptly in connection with such partial or other unemployment. [¶] (5) Compelling reasons, or circumstances which would prevent a reasonable person under the circum-

---

[4] For benefit purposes, the regulations define "week of unemployment" as the week of unemployment in which an individual registers in person at an employment development office prior to the close of business on Friday of such week, and the subsequent seven-day periods commencing 12:01 a.m. Sunday. (Cal. Code Regs., tit. 22, §§ 1253-1, 1253-2.)

stances presented from filing the claim or registering for work. [¶] . . . . [¶] (6) The department assigned a claim filed to the wrong program. [¶] (7) Mistake, inadvertence, surprise, or excusable neglect. However, 'good cause' does not include negligence, carelessness, or *procrastination*, in the absence of circumstances excusing these causes for delay. [¶] . . . . [¶] (b) The individual shall file such claim or register for work *with reasonable diligence after the termination of good cause*, usually not later than during the week following the week in which such termination occurs. [¶] (c) A first . . . claim for benefits or registration for work shall not be valid if it is filed *more than 13 weeks after the end of the benefit year* (actual or potential) during which the week of partial unemployment or week of unemployment occurred." (Italics added.)

2. *Good cause for late filing includes, but is not limited to, the examples set forth in California Code of Regulations title 22, section 1326-10, subdivision (a).*

■■ Wang contends his employer's failure to advise him of his unemployment benefit rights when he was terminated makes this a proper case for backdating. As authority, Wang invokes California Code of Regulations, title 22, section 1326-10, subdivision (a)(1), which, as indicated, provides the "[f]ailure on the part of the employer with respect to *partial unemployment benefits* to comply with any of the provisions of Sections 1326-7 and 1326-9 of these regulations" amounts to good cause for extending the claim filing period. (Italics added.)[5] This section, by its terms, is inapplicable because Wang's claim is not for partial unemployment benefits, but for total unemployment benefits.[6]

However, the fact that California Code of Regulations, title 22, section 1326-10, subdivision (a)(1), is inapplicable is not fatal to Wang's claim because good cause to extend the period for filing a claim is not limited to the circumstances set forth in California Code of Regulations, title 22, section 1326-10, subdivision (a). Rather, the regulation provides good cause "includ[es], but [is] not limited to" the examples illustrated therein. (Cal. Code Regs., tit. 22, § 1326-10, subd. (a).) ■■ This language is consistent with the principle that unemployment insurance law is to be liberally construed to further the legislative objective of reducing the hardship of unemployment (*Gibson* v. *Unemployment Ins. Appeals Bd.* (1973) 9 Cal.3d 494,

[5] California Code of Regulations, title 22, section 1326-7, requires an employer in the initiation of a first claim for partial unemployment benefits to give a partially unemployed individual a notice of reduced earnings on a form supplied by the EDD. California Code of Regulations, title 22, section 1326-9, which also pertained to employer responsibilities relating to partial unemployment, was repealed in 1982.

[6] A partially unemployed individual is one who works less than his or her normal customary full-time hours for his or her regular employer because of lack of full-time work. (Cal. Code Regs., tit. 22, § 1252-1, subd. (a)(2).)

499 [108 Cal.Rptr. 1, 509 P.2d 945]). Accordingly, good cause for a delayed claim is to be defined broadly.

3. *Lack of advisement by employer does not provide good cause for delayed claim.*

 Wang contends good cause exists and that his late claim is timely per se due to CSULB's violation of its duty under section 1089 to advise him of unemployment benefit rights.

Section 1089 provides: "Each employer shall post and maintain in places readily accessible to individuals in his service such printed statements concerning benefit rights and other matters *as may be prescribed by authorized regulations [promulgated by the EDD]*. Each employer shall, *pursuant to authorized regulations*, supply such individual at the time he becomes unemployed with copies of printed statements or materials relating to claims for benefits. Each employer shall immediately notify each employee of any change in his relationship with said employer. Failure to comply with this section by an employer shall constitute a *misdemeanor*. Such printed statements shall be supplied by the director to each employer without cost to him." (Italics added.)[7]

Due to the lack of any authorized regulations by the EDD implementing section 1089, CSULB had no affirmative duty to advise Wang as to his unemployment benefit rights. Although California Code of Reagulations, title 22, section 1326-10, subdivision (a), broadly defines good cause for delay, and an employee's unawareness of his or her benefit rights may support good cause for a *reasonable* delay in filing an initial claim, good cause cannot be based on an employer's failure to discharge a nonexistent duty to advise an employee in this regard. Thus, Wang's theory his late claim is timely per se due to a statutory violation by CSULB is unfounded.

While section 1089 is unavailing to Wang, we consider whether Wang otherwise has demonstrated good cause for his delayed filing.

---

[7]California Code of Regulations, title 22, section 1089-1, pertaining to posting of notices, was repealed effective December 20, 1981.

With respect to section 1089, the Board's decision held: "The employer's obligation under section 1089 of the code is conditioned on the Department prescribing its responsibilities in regulations. Regulations the Department had promulgated pursuant to the code section were repealed in 1981 and there have been no authorized regulations since that time. Accordingly, the employer did not violate any requirement when it failed to make information available to the claimant."

### a. *Substantial evidence supports finding of lack of good cause for delay.*

■ ■■ ■ ■ On this record, substantial evidence supports the trial court's determination there was no good cause for Wang's two-year delay in filing a claim.[8]

Drawing all reasonable inferences in favor of the superior court's determination as we are required to do, Wang's procrastination precluded a finding of good cause for delay. California Code of Regulations, title 22, section 1326-10, subdivision (b), requires the employee to file a claim "with reasonable diligence after the termination of good cause, usually not later than during the week following the week in which such termination occurs." While the lack of awareness by an employee of the right to seek unemployment benefits due to any number of reasons may provide good cause for a *reasonable* delay in filing a claim, this record discloses that Wang failed to exercise due diligence by allowing two years to elapse before formally filing a claim for benefits. The protracted delay occurred because Wang took it upon himself to decide he was ineligible for unemployment benefits rather than making a reasonable inquiry as to his eligibility. We conclude Wang's lengthy period of inaction is inconsistent with good cause for a late application.

### b. *Irrespective of good cause, claim is untimely.*

As set forth above, California Code of Regulations, title 22, section 1326-10, subdivision (c), states a claim for benefits "shall not be valid if it is filed more than 13 weeks after the end of the benefit year (actual or potential) during which the week of partial unemployment or week of unemployment occurred."[9]

Accordingly, while the unemployment insurance law is to be liberally construed (*Gibson* v. *Unemployment Ins. Appeals Bd., supra,* 9 Cal.3d at p. 499), an employee's ignorance of the right to file for unemployment benefits does not give rise to an indefinite extension of time to file a claim. Even assuming good cause exists for a delayed claim, California Code of Regulations, title 22, section 1326-10, subdivision (c), imposes an outside limit of 13 weeks beyond the end of the benefit year. This limitation is

---

[8] While the superior court exercises its independent judgment on the administrative evidence, the appellate court's inquiry is confined to whether the superior court's findings and conclusions are supported by substantial evidence. (*Interstate Brands* v. *Unemployment Ins. Appeals Bd.* (1980) 26 Cal.3d 770, 782 [163 Cal.Rptr. 619, 608 P.2d 707]; *Lacy* v. *California Unemployment Ins. Appeals Bd.* (1971) 17 Cal.App.3d 1128, 1134 [95 Cal.Rptr. 566].)

[9] " 'Benefit year', with respect to any individual, means the 52-week period beginning with the first day of the week with respect to which the individual first files a valid claim for benefits and thereafter the 52-week period beginning with the week in which such individual again files a valid claim after the termination of his or her last preceding benefit year." (§ 1276.)

consistent with the regulatory scheme which is aimed at compensating individuals when they become unemployed and administering benefits on a weekly basis.

Because Wang did not file a claim for benefits until a few days before the two-year mark, irrespective of good cause for delay, backdating of the claim to May 24, 1987, is barred by California Code of Regulations, title 22, section 1326-10, subdivision (c).

## CONCLUSION

An unemployed individual's lack of awareness of the right to file for unemployment benefits, for any of a number of reasons, may provide good cause for allowing a delayed claim for benefits. (Cal. Code Regs., tit. 22, § 1326-10, subd. (a).)

But, due to the lack of authorized regulations implementing section 1089, good cause cannot be based on the lack of an advisement by an employer regarding unemployment benefit rights.

It is unclear whether the lack of such regulations is due to an oversight by the EDD. The effect of such omission, however, is to thwart the intent of the Legislature. If there were authorized regulations in place, an employer's failure to comply with section 1089 would constitute a misdemeanor. Instead, at present, section 1089 is a hollow statute.

## DISPOSITION

The judgment is affirmed. Each party to bear respective costs on appeal.

Danielson, J., and Hinz, J., concurred.