615 A.2d 1210

**ATLANTIC VENTURE, INC.**

v.

**SUPERVISOR OF ASSESSMENTS OF BALTIMORE CITY.**

**CHESAPEAKE VENTURE, INC.**

v.

**SUPERVISOR OF ASSESSMENTS OF BALTIMORE CITY.**

**CHESAPEAKE VENTURE, INC.**

v.

**SUPERVISOR OF ASSESSMENTS OF BALTIMORE CITY.**

Nos. 179, 180 & 181, Sept. Term, 1992.

Court of Special Appeals of Maryland.

Nov. 25, 1992.

74

Nancy E. Paige (Allan J. Malester and Gordon, Feinblatt, Rothman, Hoffberger & Hollander, on the brief), Baltimore, for appellants.

William K. Hammond, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and David M. Lyon, Asst. Atty. Gen., on the brief), Baltimore, for appellee.

Argued before FISCHER, DAVIS and HARRELL, JJ.

FISCHER, Judge.

Atlantic Venture, Inc. and Chesapeake Venture, Inc. appeal a December 12, 1991 order of the Circuit Court for Baltimore City that affirmed in part and reversed in part three decisions of the Maryland Tax Court (Tax Court). For the limited purpose of conducting a hearing, the Tax Court consolidated three appeals from decisions of the Property Tax Assessment Appeals Board (Board). The Tax Court affirmed in part and reversed in part decisions of the Board affirming the appellee's, Supervisor of Assessments' (Supervisor), property tax assessments for three properties. By an April 24, 1992 order, we consolidated the three cases for appeal.

The three properties involved are located in Baltimore City and were assessed by the Supervisor, under direction of the Maryland Tax–Prop.Code Ann. (1986) (Property Tax Code), for the tax year beginning July 1, 1988. The first property, 2901 Childs Street, consists of 42.124 acres of "deep water channel" land with a bulkhead. Atlantic Venture, Inc. is the owner and taxpayer of this parcel. The Supervisor assessed the property for $8,804,120, divided as

$5,476,120 for land ($130,000 per acre) and $3,328,000 for improvements.

The second property, 2000 Chesapeake Avenue, consists of 25.361 acres of "non-deep water channel" land with a bulkhead. Chesapeake Venture, Inc. is the owner and taxpayer of this parcel. The Supervisor assessed this property for $4,715,680, divided as $3,296,930 for land ($130,000 per acre) and $1,418,750 for improvements.

The third property, 2001 Chesapeake Avenue, consists of 6.21 acres (the leased portion of a 17.295 acre parcel lot) of "deep water channel" land with a bulkhead. Chesapeake Venture is the taxpayer of this parcel, which it leases from the owner, Chevron Oil Company. The Supervisor assessed the property for $1,334,300, divided as $807,300 for land ($130,000 per acre) and $527,000 for improvements.[1]

Under the Property Tax Code § 14–502, the Taxpayers appealed these property tax assessments to the Board on March 31, 1989 and April 3, 1989. On July 28, 1989, the Board affirmed the Supervisor's assessment of each property. On August 25, 1989, the Taxpayers appealed the Board's decisions to the Tax Court. The Taxpayers argued to the Tax Court that the "land" value (as opposed to the "improvements" value or "total" value) of the assessments was overstated. During this consolidated hearing, issues arose as to: 1) the propriety of appealing only the "land" value and, 2) whether the bulkheads should be valued as improvements or whether they are exempt under Property Tax Code § 8–238.[2]

The Tax Court's opinion stated that the Tax–Property Article allowed the Taxpayers to appeal only the land values of the assessments and that the bulkhead exemption did

---

**1.** For purposes of this consolidated appeal, both Atlantic Venture, Inc. and Chesapeake Venture will be referred to as the "Taxpayers."

**2.** § 8–238 provides that a bulkhead "installed solely to prevent shore erosion or damage by wave action of any body of water may not be assessed as an improvement, unless the [bulkhead] is part of another improvement."

not apply to the Taxpayers' properties. In a "Supplemental Memorandum of Grounds for Decision" the Tax Court found: 1) that the Taxpayers' income and market approaches failed to convince the court that the assessment of the land values for the three properties warranted a reduction in the land values; 2) that 2000 Chesapeake Avenue was improperly valued for a pier with deep water access, and therefore, the land value was over assessed by $30,000 per acre and, 3) that the bulkheads are not exempt from assessment and the value of the bulkheads must be added as improvements. The Tax Court went on to state, "[Supervisor] did not allocate the bulkhead value to the improvement but, rather to the land. Only the land value was under appeal. Therefore, we shall remand the appeals to the Supervisor and order him to reduce the value of the land on all three appeals by that amount attributable to the costs of the bulkhead. Since neither [Supervisor nor Taxpayers] appealed the value of the improvements, the value as determined by the Property Tax Assessment Appeals Board is not within our jurisdiction and shall remain unchanged."

The Taxpayers and the Supervisor appealed the Tax Court's orders to the Circuit Court for Baltimore City. The circuit court opinion states that property tax assessment appeals are appeals of the total property assessment, land and improvements. The circuit court affirmed the Tax Court's finding that the bulkheads are not exempt from assessment, reversed the assessment of the land values, and remanded to the Tax Court for the Tax Court to remand to the Board to remand to the Supervisor and for the Supervisor to assess the properties again. The circuit court ordered the Supervisor to revalue the total property, including the bulkheads in the value of the improvements.

On this appeal, the Taxpayers present the following questions:

1. Did the circuit court err in remanding for reassessment of land and improvements when the taxpayers challenged land values only?

2. Did the circuit court err in failing to remand to the Tax Court with instructions to value the land in accordance with the evidence?

3. Did the circuit court err in directing that bulkheads on the subject properties be assessed as improvements? [3]

### I.

The Taxpayers argue that they "only challenged the value of the land, and the Circuit Court erred in reaching the valuation of improvements." The Taxpayers contend that, since they did not appeal the Supervisor's valuation of the improvements, the "assessments as to improvements were therefore not before either the Tax Court or the Circuit Court."

The Taxpayers believe that the Property Tax Code permits an appeal of only the land valuation. The Taxpayers refer to § 8–104(a) which governs the Supervisor's valuation of real property and which states, "[R]eal property shall be valued separately for: (1) the land; and (2) the improvements on the land." The Taxpayers also refer to §§ 14–502 and 14–509 which allow a taxpayer to appeal a "value or classification in a notice of assessment."

In refuting the Taxpayers' argument, the Supervisor contends that § 8–401(c), which governs the notification to the taxpayer of a change in valuation, allows an appeal of the total value only. The Supervisor points to § 8–401(c)(3), which requires the Supervisor to provide notification of "the amount of the proposed value including a statement that the total amount of the proposed value is the value for purposes of appeal." We agree that the total value of the assessment is the value from which an appeal must be taken.

---

**3.** Although the Supervisor has filed a cross-appeal we are unable to distinguish any "new" issues which the Supervisor raises. We will, therefore, concentrate our review on the Taxpayers' questions.

Section 8-401(c)(3) makes it mandatory upon the Supervisor to notify the taxpayer that the total amount of the proposed value is the value to be used for appeal. The sections that the Taxpayers rely upon, §§ 8-404, 14-502 and 14-509, state that a person receiving notice of a change under § 8-401, may "appeal the value or classification...." The Taxpayers posit that the "value" referred to in these sections is the value of the land or improvements, and therefore, the Taxpayers may appeal any one of those values or both of the values. We do not agree. The "value" referred to in these sections is the "total amount of the proposed value" of which the Taxpayer is notified under § 8-401(c)(3) to be the value for appeal. Although the land value and improvements value are contestable issues, the total property value, as provided for in § 8-401(c)(3), is the value from which the taxpayer may appeal.

In addition to the statutory construction, the Taxpayers argue that the common law allows them to appeal only the "land" value. The Taxpayers state, "[I]t did not appeal the value of the improvements, and the assessments as to improvements were therefore not before either the Tax Court or the Circuit Court." The Taxpayers cite *Susquehanna Power Co. v. State Tax Commission*, 159 Md. 334, 151 A. 29 (1930), as upholding the Tax Court's decision in these cases to limit its address to the "land" values. In *Susquehanna*, the Court of Appeals allowed the power company to appeal one of twelve separate values included in the State Tax Commission's $18,735,265 assessment of the company's property. In *Susquehanna*, 159 Md. at 341, 151 A. 29, the County Commissioners of Harford County placed the following assessment upon the company property:

Electrical transmission system ...................... $109,293.
Land submerged and rights........................ 6,622,816.
Buildings (dam and power house) .................. 12,003,156.
 Total .............................. $18,735,265.

The company appealed this assessment to the State Tax Commission of Maryland. The commission reversed the

action of the county commissioners and lowered the assessment of the property to $12,023,633. The commission's assessment was broken down into sixteen categories such as water towers, dwelling houses and acres of land. One portion of the commission's assessment was 2,110 acres of submerged land valued at $2,349,300. The power company appealed the assessment to the Court of Appeals arguing that the submerged land was exempt from assessment.

The *Susquehanna* Court found that the Tax Commission had correctly determined that the submerged land was assessable and that the commission properly valued that area. The Court noted the uniqueness and difficult nature of valuing the power company's property. The Court also found that the commission was "compelled to separate the project into its component parts and to value such parts separately. And while that method was more difficult and more inconvenient than valuing the project as a whole, it involved no injustice or unfairness to the taxpayer, because after all the value of the whole was but the sum of the values of its parts, considered as parts of the whole." *Susquehanna*, 159 Md. at 352, 151 A. 29. The Court affirmed the commission's order and found that the testimony was largely that of "warring experts" and that there was no evidence for the Court to determine that the commission's judgment was not fairly exercised nor that its conclusion was not correct.

The Taxpayers cite the following statement in *Susquehanna*, 159 Md. at 341, 151 A. 29, as allowing appeals limited to only the "land" assessment value, "[T]he appeal to the Circuit Court for Harford County did not challenge the propriety of the entire assessment made by the county commissioners, but involved only the item of 2,110 acres of land submerged by the water impounded by the dam, and this court on this appeal is limited to a consideration of that item alone." Contrary to the Taxpayers' argument, *Susquehanna* does not hold that taxpayers may appeal only a portion of the assessment. In *Susquehanna*, the Court stated that it would not overturn the commission's valuation

of the submerged land since it could not be determined from the evidence that the valuation was incorrect. As the Court of Appeals stated in *Susquehanna*, the taxpayer was not prejudiced by the commission's assessment since the submerged land portion of the assessment was correct, and therefore the sum of the parts still equalled the whole.

In *Macht v. Dep't of Assessments*, 266 Md. 602, 610, 296 A.2d 162 (1972), where the taxpayers derived revenue from leasing the airspace of a building, the court stated, "[U]nder the teaching of *Susquehanna Power*, we see no reason why land, improvements and airspace could not be separately valued for assessment purposes, so long as the sum of the elements did not exceed the value of the whole." So, as the Court of Appeals has stated previously and as the Supervisor argues, the property assessment may be divided into different portions for ease of valuation, although the sum of these portions must still equal the total assessment.

The Taxpayers contend that the *Susquehanna* decision is conclusive that a taxpayer may appeal only the "land" value of a property assessment. The present case is an example of why the taxpayers' proposition is incorrect; here, the Tax Court erred in requiring the land to be revalued for the subtraction of the bulkheads and in failing to require the improvements to be revalued for the addition of the bulkheads. This revaluation violates *Susquehanna's* holding that the sum of the parts must equal the value of the whole.

In addition, *Susquehanna* was decided by the Court of Appeals in 1930, but the statutory language of Property Tax Code § 8–401(c)(3) was added by Chapter 314 of the Acts of 1979. Since the statute is controlling, the total value of the assessment is the "value" for purposes of appeal. An assessment must be partitioned into land and improvement values. Md.Tax–Prop.Code Ann. § 8–104(a). A taxpayer may offer proof as to only a portion of the total assessment; however, this does not preclude the appellate court from addressing any other portion and/or total value of the assessment. Therefore, since the total value of both the land and improvements is the total value for purposes

of appeal, the circuit court did not err by remanding for revaluation of both the land and improvements.

## II.

■ Second, the Taxpayers argue that Circuit Court "erred in failing to remand to the Tax Court with instructions to value the land in accordance with the evidence in the record." Judicial review of Tax Court proceedings is governed by Md.State Gov't Code Ann. § 10–215(g) which states:

In a proceeding under this section, the court may:

(1) remand the case for further proceedings;

(2) affirm the decision of the agency; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision of the agency:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the agency;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious.

In this case, the Tax Court found that there were problems with both the Taxpayers' and Supervisor's valuations of the land. In its "Supplemental Memorandum of Grounds for Decision" the Tax Court made the following findings:

2001 Chesapeake Avenue—the Taxpayer's market and income approaches were not sufficient to warrant a reduction in the value.

2901 Childs Street—the Taxpayer's evidence failed to convince the court that the Supervisor's value was incorrect.

2000 Chesapeake Avenue—the Taxpayer's evidence did not warrant a reduction in the valuation. The court did

reduce the land value, however, since the Supervisor had mistakenly considered this parcel to have deep water access. The court reduced the value of the land by $30,000 an acre to $100,000 an acre. The Supervisor's expert testified that $100,000 was the amount applied to waterfront property.

The circuit court reversed the Tax Court's affirmance of the land valuations as being contrary to the evidence. The three cases were "remanded to the Tax Court, for further remand to the Property Tax Assessment Appeal Board, for further remand to the Supervisor of Assessments to assess the property in each case by separately valuing the land and separately valuing the improvements including the bulkheads."

The Taxpayers believe that "the valuations adopted by the Tax Court were thus properly rejected by the Circuit Court," but the Taxpayers argue that the remand for revaluation should have been to the Tax Court and not to the Supervisor. The Taxpayers contend that the remand to the Supervisor will subject the Taxpayers to "the very real risk and expense of a new round of appeals in a never-ending cycle."

On this same issue, the Supervisor agrees that the circuit court should have remanded 2001 Chesapeake Avenue and 2901 Childs Street to the Tax Court. The Supervisor, however, is asking that we remand the cases to the circuit court to direct the Tax Court to affirm the assessments since the "Tax Court made a factual finding, supported by substantial evidence, that the Taxpayers' valuation evidence was unpersuasive." As to 2000 Chesapeake, the Supervisor believes that the circuit court should have directed the Tax Court to affirm the Supervisor's assessment since the Taxpayers only proved that the property did not have the benefit of a deep water channel and did not prove that the total value of the assessment was erroneous.

■ Judicial review of Tax Court final orders is governed by Md.Tax–Gen.Code Ann. § 13–532 which states, "[A] final

order of the Tax Court is subject to judicial review as provided for contested cases in §§ 10–215 and 10–216 of the State Government Article." Under Md.State Gov't Code Ann. § 10–215(g)(1), the circuit court may remand the case to an administrative agency for further fact finding if the court finds the agency's record devoid of substantial evidence. *Hickory Hills Ltd. v. Secretary of State*, 84 Md. App. 677, 685, 581 A.2d 834 (1990) (quoting *Juiliano v. Lion's Manor Nursing Home*, 62 Md.App. 145, 156, 488 A.2d 538 (1985)). The Tax Court is the administrative agency referred to in these provisions. Under Md.Tax–Gen.Ann.Code § 13–523, the Taxpayer's appeal of the Supervisor's assessment to the Tax Court was heard "de novo" with testimony and documentary evidence introduced. Since "de novo" proceedings were held in Tax Court, "remand for further proceedings" as referred to in Md.State Gov't Ann.Code § 10–215(g)(1), must refer to the proceedings held in Tax Court.

In this case, the circuit court found that the Tax Court's findings were not supported by evidence in the records. The circuit court, therefore, should have remanded the case to the Tax Court for "further proceedings." Md.State Gov't Code Ann. § 10–215(g); *Hickory Hills*, 84 Md.App. at 685, 581 A.2d 834. The circuit court erred by remanding the cases to the Tax Court to remand to the Supervisor for revaluation of the assessments.

### III.

Third, the Taxpayers contend the circuit court erroneously affirmed the Tax Court's finding that the bulkheads were not exempt under Property Tax Code § 8–238 which provides:

A seawall, bulkhead, or other structure installed solely to prevent shore erosion or damage by wave action of any body of water may not be assessed as an improvement, unless the seawall, bulkhead or other structure is part of another improvement.

The Tax Court found the bulkheading "was for commercial purposes, as a car import/export facility, as well as conservation purposes." The circuit court affirmed this finding, stating that the Tax Court "made a fact-finding that the bulkhead was an integral part of the pier system, that it was an extension of the pier as to the 2001 Chesapeake Avenue property, and that in relation to the other properties, that the use of the bulkhead in the way that it tied in with rest of the property, as part of loading and offloading of the ships, was assessable as an improvement." The circuit court remanded the cases to the Supervisor to revalue the properties, including the valuation of the bulkheads as improvements.

The Taxpayers agree that the Tax Court properly held "that bulkheading must be valued, if at all, as an improvement." The Taxpayers, however, contend that, since they did not appeal the "improvement value" to the Tax Court, the Tax Court erred because the "taxation of the bulkheads was not before it." The Taxpayers refer to the Tax Court's bulkhead ruling as being mere dicta and argue that it was improper for the circuit court to rely upon the bulkhead ruling. As we stated previously, a property's total value of assessment is the proper value for purposes of appeal. With adequate evidence, the court may determine any portion of that value as long as the sum of the parts equals the total value of the assessment. *Susquehanna* 159 Md. at 352–353, 151 A. 29. The Tax Court determined that the bulkheading was to be valued as an improvement, but it erred by concluding that the court did not have jurisdiction to correct the "improvements" values. We believe that the Tax Court's bulkhead finding was not dicta.

Second, the Taxpayers state that, as a "matter of departmental policy, the Supervisor does not tax bulkheads, whether or not they are part of another improvement." The Taxpayers contend that if the bulkheads are valued as improvements, then the Taxpayers will be "subject to an assessment not made against owners of other bulkheaded property." Mr. Bivens, an employee of the Supervisor and

the assessor of the properties, did not testify that bulkheads were *never* valued by the Supervisor. Instead, Mr. Bivens acknowledged that it is a departmental policy to value the bulkhead as an integral part of the land value if it is determined that the bulkhead is not solely for soil conservation. He stated that the department does not assess bulkheads as improvements; he did not state that bulkheads are not assessed. Regardless of the department's policy, bulkheads which are not excluded under § 8–238 should be assessed as improvements.

Third, the Taxpayers argue that assuming it was "proper for the court to reach the statutory exemption of the bulkheads, its factual findings are contrary to the evidence, and its legal conclusion is erroneous for the reason that the subject bulkheads were installed solely to prevent erosion or damage by wave action." The record includes testimony concerning the bulkheads located on each of the properties. With regard to 2901 Childs Street, Mr. Bivens' appraisal of this property stated that the improvements on the property included a pier, buildings, paving, fencing and lighting. At the Tax Court hearing, Mr. Bivens testified that the site is:

accessible to the off shore shipping channels. It is primarily used as a giant parking lot. Rail service is available.... The pier was constructed in 1987 on—my understanding on the site of an older structure which was not suitable for the current use.... We have bulkheads on the site and some rip rap.... There's one pier which juts off from the bulkhead, and that's indicated. That's the one that appears to be in the middle there that they rebuilt. That's the only pier on the site.

As to the function and purpose of the bulkheading found at 2901 Childs Street, Mr. Bivens testified:

Supervisor: What purpose does the bulkheading or sea wall serve on the subject property?

Mr. Bivens: Well it serves a number of purposes. Number one obviously is erosion, wave action and so forth. It is also necessary and integral part of any such improvements in the Baltimore Harbor that you have, like a pier.

Taxpayers: I'm going to object. I don't think he's been qualified to testify about the purposes, the functions of bulkheads.

Court: You can cross examine him. If he doesn't know anything about it when you cross examine him, it will be evident—absolutely evident, right? Go ahead. (To Mr. Bivens) You mean they have to have something to attach it to, the pier?

Mr. Bivens: No. Well no, in effect you could build a pier without putting up a bulkhead. But probably in short order you would have a pier sitting out as an island in the middle of the harbor.

It's necessary in this case—again they park cars right up to the sea wall, if there is a bulkhead. Again it's supporting the structure, the parking lot. And it's an integral part of the pier, to protect the pier. And again it also serves as prevention of erosion and so forth.

It keeps your parking lot from filling in your berth, your channel. So in this harbor, in this situation, it serves a number of purposes.

Supervisor: Is that pretty much true throughout Baltimore Harbor that you have bulkheads and rip rap with piers?

Mr. Bivens: In Baltimore Harbor you couldn't—you couldn't do the shipping business that they do without those things. You couldn't do it. Otherwise the shore line would be changing so much all of the time that they would become unusable.

Supervisor: Are the bulkhead and the sea wall part of another improvement?

Mr. Bivens: As far as I'm concerned, yes.... I mean in a very basic sense, if you—in my understanding if you have bulkhead that's part of another improvement. If you put a building—we don't have one here, but if you did, right up to the water's edge, and you have the bulkhead under it so you could build right up to the water's edge, that's part of the improvement.

And in this case, the parking facility, the bulkhead is part of that improvement, the paving and so forth. It is also an integral part of the pier. Again you cannot have the pier without the bulkhead, or you wouldn't have it long. Does that answer your question?

Supervisor: Yes. Just so that this is clear to the Court, you[r] land value, whether the Hundred and Thirty Dollar assessed value or the Hundred and Fifty Thousand Dollar value that you have developed in your narrative appraisal, does include the value of the channel, and also the value attributable to having bulkheading?

Mr. Bivens: Having bulkheading increases the value of the land in the Baltimore Harbor. If you don't have it there, the land isn't going to be worth as much. It cannot be.

After cross examination by the Taxpayers, the Tax Court asked Mr. Bivens to clarify his position on the treatment of the bulkhead as adding value to the land but not treated as an improvement. Mr. Bivens replied, "[I]t's just departmental policy that we don't. Our understanding of the statute is that the way we look at the bulkhead as part of another improvement, as necessary to it. We could assess it as a separate improvement. We don't, as departmental policy."

The Taxpayers' rebuttal witness was Mr. Kroh, president of Atlantic Venture, Inc. and Chesapeake Venture, Inc. Mr. Kroh testified that the purpose of the bulkhead is soil conservation. Mr. Kroh stated, "[A] pier is entirely separate from the bulkhead. The purpose that the bulkhead has is to keep the soil from collapsing into your channel, which of course is just a part of the normal soil erosion. But the operation of the pier itself, that is in berthing a ship, has no relationship to the bulkhead."

Regarding 2001 Chesapeake Avenue, Mr. Bivens testified that the bulkheading on this property served a somewhat different purpose than the bulkheads on the other properties:

[Y]ou notice here, in a normal situation—not normal, but in most situations involving piers what you have—let's forget this for a second, is you have a bulkhead here and you have a pier coming out like that. Okay?

In this situation the bulkhead itself is part of the on loading and off loading ramp for the ships. In other words it's just an extension of the pier. You could not do that, you could not put that ship right up next to the land without the bulkhead being there like they do. They tie right up along here, just like that. Okay?

And so in that respect it's even more important site that it's here, and it's even a more integral part of this whole pier complex than even on Atlantic Venture.

The Taxpayers did not offer any rebuttal testimony to Mr. Bivens' description of the purpose and use of this bulkhead.

Concerning 2000 Chesapeake Avenue, Mr. Bivens testified:

[W]ell again it would be similar to what we discussed before. They can park right up to the water's edge. In effect you couldn't do that. They have maximized their parking ability, the space they need to park cars, by adding a bulkhead there. And in effect its supporting a parking lot basically, so they can use it to a maximum benefit.

The Taxpayers did not offer any rebuttal evidence.

From the above evidence, the Tax Court concluded that the bulkheads found on each of the properties are "for commercial purposes, as a car import/export facility, as well as conservation purposes." The Supervisor argues that the bulkheads did not meet the requirements of Property Tax Code § 8-238 since the bulkheads were not installed solely for conservation of the shoreline. The Supervisor states that the evidence shows that the bulkheads enable the Taxpayers to "use the properties for commercial shipping purposes—on and off loading cargo, constructing piers, berthing ships, dredging shipping channels, and ex-

tending and maintaining parking facilities on the land behind the bulkheads."

We believe that when bulkheads enable taxpayers to further a shipping type business, or are essential to the operation of a shipping complex, the bulkheads are used for purposes other than to prevent shore erosion. In this case, some of the properties use the bulkheads to maintain and support attached piers and, in some instances, the bulkhead itself is used as a berthing area for ships. Obviously, on these locations the bulkhead is used for commercial purposes and is not exempt from assessment under § 8–238. This is true for the properties located at 2901 Childs Street and 2001 Chesapeake Avenue. The evidence shows, however, that the bulkhead located at 2000 Chesapeake is used solely to control shore erosion. The mere fact that the Taxpayers may benefit, because the bulkhead provides a few more square feet on which to park cars, is not a purpose for which the bulkhead was installed under § 8–238. The circuit court correctly remanded the case for revaluation of the property. The circuit court was correct in its finding that the properties located at 2901 Childs Street and 2001 Chesapeake Avenue are not exempt under § 8–238. The circuit court was clearly erroneous, however, in its finding that the bulkhead located at 2000 Chesapeake Avenue is not exempt under § 8–238.

In summary, we affirm the circuit court's order to reverse the Tax Court's affirmance of the land valuations. The circuit court is directed to remand these cases to the Tax Court for further proceedings and, consistent with this opinion, to reassess the land and improvements of each property.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.

CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID ONE–HALF BY APPELLANTS, AND ONE–HALF BY APPELLEE.