666 A.2d 921

**DEPARTMENT OF ECONOMIC AND EMPLOYMENT DEVELOPMENT**

v.

**Robert K. LILLEY.**

No. 2070 Sept. Term, 1994.

Court of Special Appeals of Maryland.

Nov. 3, 1995.

746

Lynn M. Weiskittel, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General and Sheila McDonald Gill, Assistant Attorney General, on the brief), Baltimore, for appellant.

Bradford W. Warbasse (Gordon, Feinblatt, Rothman, Hoffberger & Hollander, L.L.C., on the brief), Baltimore, for appellee.

Argued before FISCHER and HOLLANDER, JJ., and ROSALYN B. BELL, J. (Retired Specially Assigned).

HOLLANDER, Judge.

The Department of Economic and Employment Development, ("DEED"), appellant, found Robert K. Lilley, appellee, ineligible for unemployment insurance benefits because his claim was untimely filed. After DEED's Board of Appeals (the "Board") denied review, Lilley sought review of the agency's decision in the Circuit Court for Baltimore County. It reversed the Board's decision and remanded the case to the agency with instructions to backdate Lilley's application and award him unemployment benefits. In its appeal to this Court, DEED presents three issues for our review, which we have rephrased slightly for clarity:

I. Does substantial evidence support the Board's finding that Westinghouse did not knowingly make a false

statement with the intent to prevent appellee from collecting benefits?

II. Even if the Board's finding of fact was not supported by substantial evidence, may the circuit court make its own findings instead of remanding the case to the Board?

III. When reversing the Board's decision, may the circuit court substitute a remedy implied but not expressed in the statute or must it remand the case to the Board for the Board's consideration of whether to exercise its discretion?

For the reasons discussed below, we answer the first two questions in the negative and, therefore, we decline to decide the remaining issue. Accordingly, we shall vacate the decision of the circuit court and remand this case to the agency for further proceedings.

## Factual Background

Lilley was employed by Westinghouse for over fourteen years. In October 1992, Lilley received notice from Westinghouse Electric Corporation that he would be laid off as of December 31, 1993, as part of the company's mass reduction in force at the Integrated Logistics Service Division. At the time of the notice and subsequent termination, Lilley was on total disability and was receiving monthly disability payments.

Westinghouse had opened an on-site resource center to assist affected employees in applying for unemployment insurance benefits. Lilley called the benefits office and, based on his conversation with a benefits representative, Lilley did not file for benefits at the time of termination.

Almost a year later, in November 1993, Lilley's doctor found him able to work and released him from care. On November 10, 1993, Lilley applied for unemployment insurance. The claims examiner determined that Lilley was ineligible for benefits because he did not have sufficient earnings in the

preceding base period to qualify.[1] The claims examiner also informed Lilley that he would have qualified for benefits if he had *applied* in January 1993, directly after his termination from Westinghouse, even though his disability would have prevented him from *collecting* benefits at that point. Had he filed at the time of termination, Lilley would have preserved his monetary eligibility and thus would have qualified for benefits when he regained his ability to work.

In response, Lilley explained that he had filed late based on incorrect advice from a Westinghouse representative. Nonetheless, the claims officer rejected appellee's request to backdate the claim to the time of his layoff and, on November 19, 1993, denied Lilley's claim for benefits.

Lilley appealed. Thereafter, a DEED hearing examiner conducted a *de novo* hearing to determine if Lilley had "filed proper claims for unemployment insurance benefits." At the hearing, Lilley claimed that Westinghouse violated Md.Code Ann., Labor & Emp't art. ("L.E."), § 8–1302 (1991) by knowingly deceiving him about his ability to file for insurance benefits, notwithstanding his inability to collect benefits. Lilley and the DEED claims examiner were the only witnesses; Westinghouse was not notified of the hearing because it supposedly "involved an Agency issue," regarding whether the claimant properly filed a claim in accordance with L.E. § 8–901.

Lilley testified that a Westinghouse insurance benefits employee gave him erroneous information about filing:

I asked her about unemployment insurance, I said, "Listen. I can't get over to the resource center to file anything," and she says, "Well, there are two reasons why you are not going to be eligible for unemployment." She says, "Number one, you are not able to work." She says, "Based on your permanent disability, long term disability right now,

---

1. To qualify for unemployment insurance benefits, a claimant must have sufficient earnings in the claimant's "base period," which is four of the five quarters immediately preceding the application. Md.Code Ann., Labor & Emp't art., §§ 8–101(b), 802 (1991).

even if you wanted to work you cannot do so," and she says, "Number two," she said, "Even though you are officially terminated as of December the 31st, because you are on long term disability and you are receiving disability pay checks and you are receiving insurance benefits, in kind of a semi-way, you are still on the payrolls of Westinghouse." She says, *"Therefore, you are not eligible to even file for unemployment insurance."*

\* \* \* \* \* \*

It would stand to reason ... that they are going to do whatever they possibly can not to pay the insurance policy, you know, maybe not volunteer the information.

(Emphasis added). The DEED claims examiner corroborated Lilley's testimony. She said:

[I]t seemed to him and to me that Westinghouse might have misled him as to what he was able to do. They kind of said, since you aren't able to collect unemployment, able to work because of your foot injury, *you aren't able to file for benefits.*

(Emphasis added).

Although Lilley testified that Westinghouse told him he was not eligible to file for benefits, the hearing examiner found only that Lilley "was told by his employer that he would not be eligible [to receive] unemployment benefits because he was disabled." Accordingly, the hearing examiner found "insufficient information" that Westinghouse violated L.E. § 8–1302. Additionally, the hearing examiner found no evidence to show that Westinghouse had violated L.E. § 8–603, which requires employers to post notices in accessible places informing employees of their right to unemployment insurance benefits. Accordingly, the hearing examiner concluded that Lilley had untimely applied for unemployment insurance. The hearing examiner also determined that, in any event, DEED had no authority to backdate Lilley's claim under the circumstances

here.[2] As noted, Lilley sought review in the circuit court, which rejected DEED's conclusion. The court found a lack of substantial evidence to support the Board's determination that Westinghouse merely informed Lilley that he was not eligible to receive benefits. Rather, the court was of the view that Westinghouse advised Lilley that he could not even *file* for benefits. According to the court, Lilley "was advised that he was not eligible *to file* for unemployment benefits because he did not meet the requirement that he was able to work." (Emphasis added). The court also observed:

> There is a significant distinction between being eligible to file for unemployment benefits and being eligible to receive these benefits. Had the Appellant filed for benefits at the time of his lay-off [sic], even though he did not meet the eligibility requirement of being physically able to work at that time, it is undisputed that he would have been eligible for unemployment benefits when he was physically able to work.

Moreover, although Westinghouse was never notified of the hearing and thus never participated, the court found, "In this case, the only evidence presented to the hearing examiner was that Appellant was *misled* by his Employer." (Emphasis added). Consequently, the court found that Westinghouse had violated L.E. § 8–1302(1).

After concluding that the Board erred in its factual determination, the court ordered the Board to backdate Lilley's claim for unemployment benefits to the date of his layoff. Although it acknowledged that no statutory authority permits or denies such a remedy, the court determined that the Board has inherent authority to backdate the claim, based on the salutary purpose of the statute. It also found support based on L.E. § 8–1302, which bars employers from making false statements to employees to prevent payment of benefits. Finally, the court also relied on various COMAR regulations, which

2. The hearing examiner referred to COMAR 24.02.02.03D(2), which allows a claim to be backdated a week if the claimant has partial earnings in the week before filing the initial claim.

permit backdating in certain situations. *See* COMAR 24.02.02.03D(2), (7) (1988).

## Discussion

### I. Judicial Review of the Board's Decision

Unemployment insurance is governed by L.E. §§ 8–101 to 8–1505 (1991 & Supp.1994) and regulations found at COMAR 24.02.01 to 24.02.02.15–1 (1988). In order to qualify for unemployment insurance, an individual must file a claim for benefits at a local DEED branch office and "register for work with the Employment Service." L.E. § 8–902(a); COMAR 24.02.02.03A. After receiving an application, DEED assesses whether the claimant meets the non-monetary and monetary eligibility requirements set forth in Title 8. L.E. § 8–903 requires that claimants be "(i) able to work; (ii) available for work; and (iii) actively seeking work," while L.E. § 8–802 contains the requirements for monetary eligibility. In this case, DEED acknowledged that Lilley met the eligibility requirements for benefits under § 8–903(a). Nevertheless, DEED denied Lilley benefits because his delay in applying prevented him from satisfying the monetary requirements under L.E. § 8–802.

An applicant who is denied benefits by the Board may seek review in the circuit court. L.E. § 8–512 (Supp.1994). This Court's "role in reviewing an administrative decision 'is precisely the same as that of the circuit court. . . .' This means we must review the administrative decision itself." *Westinghouse Elec. Corp. v. Callahan,* 105 Md.App. 25, 32, 658 A.2d 1112 (1995) (citations omitted). *See also Baltimore Lutheran High Sch. Ass'n v. Employment Sec. Admin.,* 302 Md. 649, 662, 490 A.2d 701 (1985); *Dep't of Health & Mental Hygiene v. Shrieves,* 100 Md.App. 283, 303–04, 641 A.2d 899 (1994).

L.E. § 8–512(d) sets out the standards for judicial review of an administrative agency decision regarding unemployment benefits. It provides, in pertinent part, as follows:

In a judicial proceeding under this section, findings of fact of the Board of Appeals are conclusive and the jurisdiction of the court is confined to questions of law if:

(1) findings of fact are supported by evidence that is competent, material, and substantial in view of the entire record; and

(2) there is no fraud.

The substantial evidence standard governs findings of fact rendered by the agency. *See Westinghouse*, 105 Md. App. at 33, 658 A.2d 1112; *Baltimore Lutheran High Sch. Ass'n*, 302 Md. at 662, 490 A.2d 701; *Allen v. Core City Youth Program*, 275 Md. 69, 74–75, 338 A.2d 237 (1975). The substantial evidence test "is limited to determining whether a reasoning mind could have reached the factual conclusion reached by the agency." *Liberty Nursing Ctr. v. Dep't of Health & Mental Hygiene*, 330 Md. 433, 443, 624 A.2d 941 (1993). *See also Baltimore Lutheran High Sch. Ass'n*, 302 Md. at 662, 490 A.2d 701. Even if the reviewing court could have reached a different result based on the evidence before the agency, the court must uphold the agency's determination if it is rationally supported by the evidence in the record. *Bulluck v. Pelham Wood Apartments*, 283 Md. 505, 515–16, 390 A.2d 1119 (1978).

In making this determination, a reviewing court may not substitute its own judgment for that of the agency. *Westinghouse*, 105 Md.App. at 34, 658 A.2d 1112; *Board of Educ. v. Paynter*, 303 Md. 22, 35, 491 A.2d 1186 (1985); *Bulluck*, 283 Md. at 513, 390 A.2d 1119 (quoting *Bernstein v. Real Estate Comm.*, 221 Md. 221, 230, 156 A.2d 657 (1959), *appeal dismissed* 363 U.S. 419, 80 S.Ct. 1257, 4 L.Ed.2d 1515 (1960)). Rather, the agency's determination is presumed valid because the agency possesses special expertise to construe its own regulations. *Westinghouse*, 105 Md.App. at 34, 658 A.2d 1112; *Dep't of Health & Mental Hygiene v. Reeders Memorial Home, Inc.*, 86 Md.App. 447, 453, 586 A.2d 1295 (1991). Indeed, "where inconsistent inferences from the same evidence can be drawn, it is for the agency to draw the infer-

ences." *Bulluck,* 283 Md. at 513, 390 A.2d 1119. *See also Westinghouse,* 105 Md.App. at 35, 658 A.2d 1112; *Baltimore Lutheran High Sch. Ass'n,* 302 Md. at 663, 490 A.2d 701.

## II. The Agency's Factual Conclusions Were Not Supported by Substantial Evidence

It is undisputed that Lilley's claim for benefits was untimely filed under L.E. § 8–902. At the outset, DEED considered the issue only as a procedural one. But in actuality, the agency's determination hinged on its resolution of the substantive issue of whether Westinghouse intentionally misled Lilley, in violation of L.E. § 8–1302, thereby causing him to delay the filing of his application for unemployment insurance benefits.

L.E. § 8–1302 prohibits employers from knowingly misleading their employees in an effort to prevent employees from receiving unemployment compensation. L.E. § 8–1302 provides, in pertinent part, as follows:

An employer, its officer or agent, or another person may not:

(1) knowingly make a false statement or false representation or knowingly fail to disclose a material fact to:

(i) prevent or reduce the payment of a benefit to an individual who is entitled to the benefit[.]

Employers who "willfully" violate L.E. § 8–1302 are subject to fine, imprisonment, or both. L.E. § 8–1305(a). But Title 8 does not contain any specific remedies for employees who fall victim to a violation of L.E. § 8–1302.

■ We agree with the circuit court that the record does not support the agency's finding that Westinghouse merely told Lilley that he was ineligible to *collect* benefits. As we have noted, the agency heard uncontradicted testimony from Lilley that Westinghouse had told him that he could not even *file* for unemployment compensation; DEED never rejected Lilley's testimony as unworthy of belief. As there was no evidence in the record to challenge Lilley's testimony, the circuit court correctly determined that the record did not support the agency's finding as to Westinghouse's conduct. In

reviewing an agency decision, a court may not uphold an agency's decision "unless it is sustainable on the agency's findings and for the reasons stated by the agency." *United Parcel Serv., Inc. v. People's Counsel,* 336 Md. 569, 577, 650 A.2d 226 (1994) (quoting *United Steelworkers v. Bethlehem Steel,* 298 Md. 665, 679, 472 A.2d 62 (1984)). *See also Harford County v. Preston,* 322 Md. 493, 505, 588 A.2d 772 (1991).

### III. The Circuit Court Erred by Engaging in Judicial Fact–Finding

█ Although the circuit court properly found that DEED's decision was not based on substantial evidence, the court thereafter erred by engaging in its own fact-finding and by substituting its judgment for that of the agency. The court found, as fact, that Westinghouse "misled" Lilley and that Lilley had been "unfairly prejudiced" by DEED's erroneous denial of his claim. For that reason, the court reversed the agency's determination and ordered the agency to award Lilley benefits.

█ A court must not engage in judicial fact-finding, *Anderson v. Dep't of Public Safety,* 330 Md. 187, 212, 623 A.2d 198 (1993); *Board of County Comm'rs v. Holbrook,* 314 Md. 210, 218, 550 A.2d 664 (1988), or otherwise supply factual findings which were not made by the Board. *Ocean Hideaway Condominium Ass'n v. Boardwalk Plaza Venture,* 68 Md.App. 650, 662, 515 A.2d 485 (1986). Rather, when the record is inadequate, the decision should be remanded to supply the deficiencies. *Atlantic Venture, Inc. v. Supervisor of Assessments,* 94 Md.App. 73, 84, 615 A.2d 1210 (1992). As we discuss below, the record here is sorely inadequate because Westinghouse never had an opportunity to respond to Lilley's testimony. Therefore, we shall vacate the judgment of the circuit court and remand the decision to the agency to conduct additional fact-finding. On remand, the parties will have an opportunity to present evidence with respect to appellee's claim that Westinghouse knowingly misinformed him, in violation of L.E. § 8–1302.

## IV. Westinghouse's Right to Participate

■ On remand, in order to develop a complete record, DEED must join Westinghouse in the proceedings, which it earlier failed to do. As we have observed, the agency did not join Westinghouse because it mischaracterized the nature of Lilley's claim for unemployment compensation. Although the hearing examiner's inquiry first concerned Lilley's failure to file within the statutory time limits for monetary eligibility, Lilley's explanation for his untimely application should have alerted DEED that Lilley's claim actually required the resolution of an important factual matter involving the employer's conduct; Lilley's allegations that Westinghouse had deliberately misinformed him raised the possibility that Westinghouse had violated L.E. § 8–1302. Given the interests at stake, we can only assume that Westinghouse would have chosen to contest Lilley's allegations and present its version of the events, if it had been afforded the opportunity to do so. Based on a one-sided record, the agency could not properly determine whether Westinghouse had violated L.E. § 8–1302.

■ L.E. § 8–806(g)(2)(i) (Supp.1995) provides that, on appeal, a hearing examiner must "give the parties a reasonable opportunity for a fair hearing in accordance with the notice provisions" in Md.Code Ann., State Gov't art. ("S.G."), §§ 10–207 and 10–208.[3] DEED's hearing officer also violated L.E. § 8–603 by failing to notify Westinghouse; the employer was entitled to "a reasonable opportunity for a fair hearing." Westinghouse was a party in interest, and the appeal involved the determination of Lilley's eligibility for benefits. Indeed, basic notions of due process required the agency to have afforded Westinghouse an opportunity to be heard. *Cf. Dep't of Human Resources v. Thompson*, 103 Md.App. 175, 197, 652 A.2d 1183 (1995) (under certain circumstances, at an adminis-

---

3. S.G. § 10–208(a) (Supp.1995) provides, in pertinent part: "An agency or the Office shall give all parties in a contested case reasonable written notice of the hearing." Additionally, the agency should inform parties of their "right to call witnesses and submit documents or other evidence." S.G. § 10–208(b)(2) (Supp.1995).

trative hearing, an applicant denied family day care registration has a due process right to challenge an agency's underlying findings of "abuse indicated"). "[A] person is entitled to fair and adequate notice of administrative proceedings that will likely affect him in order that he may have a reasonable opportunity to defend his position and protect his rights." *Highfield Water Co. v. Public Serv. Comm'n,* 46 Md.App. 332, 344, 416 A.2d 1357, *cert. denied,* 288 Md. 736 (1980). Because a compensation award to Lilley might increase Westinghouse's rate of contribution to the Unemployment Insurance Fund, *see* L.E. § 8–607, Westinghouse was entitled to be heard and to defend its interests.

### V. The Agency Possesses the Inherent Authority to Backdate Claims

██ Because we return this case to the agency for reconsideration, we shall next consider whether the agency may backdate Lilley's claim if it finds that Westinghouse did, indeed, violate L.E. § 8–1302. We agree with the parties and the circuit court that, upon a violation of L.E. § 8–1302, DEED has the inherent power to backdate a claim in order to award benefits. We explain.

COMAR authorizes DEED to backdate an applicant's claim in seven specific circumstances, including "when the claimant did not file a claim in reasonable reliance on an invalid agreement to waive, release, or commute the claimant's right to benefits." COMAR 24.02.02.04D(1)–.04D(7). Lilley relies generally on the existence of the backdating remedy, as well as the broad remedial purpose of unemployment insurance law, to argue that DEED should grant him benefits if Westinghouse deliberately attempted to prevent him from collecting unemployment insurance.

Despite the absence of any express statutory or regulatory basis for this remedy, DEED agrees with Lilley that it has the inherent power to backdate an employee's claim when an employer has violated L.E. § 8–1302. It relies on: (1) the remedial purpose of unemployment insurance law; (2) the

broad authority of the agency to promulgate regulations; and (3) COMAR provisions that expressly provide for the remedy in other circumstances.

 Established by legislative bodies, administrative agencies derive their power from enabling statutes that govern them. As this court recently noted, "An administrative agency is of course, a 'creature of statute, [which] has no inherent powers and its authority thus does not reach beyond the warrant provided it by statute.' The power to impose penalties belongs to the legislature; however, the legislature may delegate that power to an agency." *Lussier v. Maryland Racing Comm'n*, 100 Md.App. 190, 202–03, 640 A.2d 259, *cert. granted*, 336 Md. 405, 648 A.2d 991 (1994) (citations omitted). Although administrative agencies exist by statute, the absence of express statutory or regulatory authority does not necessarily preclude an agency's power to order specific remedies. In *Lussier v. Maryland Racing Comm'n*, we said:

> [W]hether a power to impose a certain penalty is expressly conferred upon an agency is not determinative of whether an agency has such power. Rather, a court must examine the purpose of the statute creating the agency, its legislative history, and any relevant case law to determine whether the legislature intended that the agency have the challenged authority.

*Id.*, 100 Md.App. at 204, 640 A.2d 259.

Affording DEED the discretion to backdate upon a finding of a violation of L.E. § 8–1302 comports with the overall objective of Maryland's unemployment compensation scheme. The General Assembly enacted the Unemployment Insurance Act in 1936, in reaction to widespread unemployment during the Depression. *Employment Security Admin. v. Browning–Ferris, Inc.*, 292 Md. 515, 517, 438 A.2d 1356 (1982). To alleviate the financial burden of the newly unemployed and their families, the General Assembly created the Unemployment Insurance Fund, which provides temporary payments to individuals who possess the ability to work, but who have lost their jobs through "no fault of their own." L.E. § 8–102(c).

*See also Westinghouse,* 105 Md.App. at 35–36, 658 A.2d 1112; *Allen,* 275 Md. at 74–75, 338 A.2d 237. L.E. § 8–102(b)(2) provides:

> [I]nvoluntary unemployment is a subject of general interest and concern that requires appropriate action by the General Assembly to prevent the spread of involuntary unemployment and to lighten its burden, which often falls with crushing force on the unemployed worker and the family of the unemployed worker.

The power to backdate a claim based on a violation of L.E. § 8–1302 is implied from the purpose and structure of unemployment law. "An expressed legislative grant of power or authority to an administrative agency includes the grant of power to do all that is reasonably necessary to execute that power or authority." *Atlantis I Condominium Ass'n v. Bryson,* 403 A.2d 711, 713 (Del.1979). Without the power to backdate an affected employee's claim, it would be pointless in some circumstances for DEED to consider whether L.E. § 8–1302 has been violated. Such a result would clearly contravene Title 8's directive to construe the provisions of unemployment insurance law liberally in order to prevent disqualifications. In effect, the process would serve no purpose without a chance for a claimant to obtain relief.

A statute must be interpreted " 'reasonably and with reference to the Legislative purpose, aim or policy as reflected in that statute,' " *Embrey v. Motor Vehicle Admin.,* 339 Md. 691, 664 A.2d 911 (1995) (quoting *Motor Vehicle Admin. v. Vermeersch,* 331 Md. 188, 194, 626 A.2d 972 (1993)). To this end, courts interpret unemployment law broadly, in favor of granting benefits to unemployed individuals. We have said: "[T]he provisions of the Unemployment Insurance Law should be liberally construed to effectuate its legislative intent, and any disqualifying provisions in the remedial statute should be strictly construed." *Westinghouse,* 105 Md.App. at 36, 658 A.2d 1112 (quoting *Taylor v. Dep't of Employment and Training,* 308 Md. 468, 472, 520 A.2d 379 (1987)). Therefore, in order to effectuate the Legislature's intention to favor

broad access to unemployment benefits, appropriate remedies, such as backdating, must be available.

It is also noteworthy that the Legislature has granted DEED broad authority to administer the unemployment compensation program. L.E. § 8–104 expressly vests the Secretary of DEED with the power to "take all appropriate steps to . . . reduce and prevent unemployment," and both the Secretary and the Board have the exclusive power to create regulations that effectuate the statutory mandate of Title 8. Although DEED and the Secretary have not explicitly created any remedies for employees injured by violations of L.E. § 8–1302, COMAR allows DEED to consider applications retroactively in other instances of employer misconduct. For instance, L.E. § 8–106 protects employees from the acts of unscrupulous employers. It states:

(a) Void agreements—(1) An agreement by an individual to commute, release, or waive a right to benefits under this title is void [and]

\* \* \* \* \* \*

(b) Benefits and rights to benefits—(1) An assignment or pledge of an individual's right to benefits under this title is void.

Violators of L.E. § 8–106, like violators of L.E. § 1302, are subject to fine, imprisonment, or both. L.E. § 8–1305(a). In addition, as previously mentioned, COMAR 24.02.02.04D(2)(7) allows DEED to backdate an employee's claim if the employer has violated L.E. § 8–106. Because L.E. § 8–106 and L.E. § 8–1302 punish similar instances of dishonest and deceptive conduct, it is illogical to assume that DEED intentionally meant to relieve victims of the former misconduct but not the later.

Finally, DEED maintains that it has the authority to consider retroactively the applications of affected employees. While not determinative, the practices and opinions of an agency bear light on the permissible bounds of their authority. The agency's " 'particular expertise in [this] particular field is entitled to deference.' " *Westinghouse,* 105 Md.App. at 34,

658 A.2d 1112 (quoting *Sinai Hospital v. Dep't of Employment and Training*, 309 Md. 28, 46, 522 A.2d 382 (1987)). As we have held:

> Although an administrative interpretation or construction of a state unemployment compensation statute is clearly not binding on the courts, where a state agency charged with administration of the state's unemployment compensation statute has construed or interpreted the statute in a particular way, the courts of the state, in recognition of the agency's expertise in the field, will give such interpretation great deference unless it is in conflict with legislative intent or relevant decisional law, or is clearly erroneous, arbitrary, or unreasonable.

*Westinghouse*, 105 Md.App. at 35, 658 A.2d 1112 (quoting 76 Am.Jur.2d *Unemployment Compensation* § 17 at 761 (1992)). *See also McCullough v. Wittner*, 314 Md. 602, 612, 552 A.2d 881 (1989); *Sugarloaf Citizens Ass'n v. Waste Disposal Auth.*, 323 Md. 641, 663 n. 2, 594 A.2d 1115 (1991). Although an agency's opinion lacks merit if it directly contradicts its enabling statute, DEED's assessment of its power reinforces the agency's statutory mandate by preventing an otherwise eligible individual from losing benefits.

We have looked for guidance to other jurisdictions that have considered whether unemployment compensation claims may be backdated, absent express statutory provision to that effect. Common to the approach other jurisdictions take is a desire to effectuate legislative intent underlying unemployment compensation statutes.

In *Wells v. Dep't of Employment Servs.*, 513 A.2d 235 (D.C.1986), the District of Columbia Court of Appeals reversed and remanded a decision of the Department of Employment Services which had denied the backdating of a claim for unemployment benefits for want of statutory authority to approve the claim. The court determined that the lack of statutory authority to backdate a claim was, without more, at odds with a "statutory scheme which suggests that backdating may be authorized in view of the caselaw [sic] in other

jurisdictions." *Id.* 513 A.2d at 240. Instead, the court sought a reasoned interpretation by the agency charged with administering the statute. Similarly, in *Meaney v. Board of Review*, 151 N.J.Super. 295, 376 A.2d 1253 (1977), the court determined that untimely filing of unemployment benefits claims should be accepted and backdated when the delay is occasioned by misinformation provided by the agency.[4]

For all these reasons, we hold that DEED may backdate Lilley's application if it finds that Westinghouse violated L.E. § 8–1302.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY VACATED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE DEPARTMENT OF EMPLOYMENT AND ECONOMIC DEVELOPMENT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLANT.

---

**4.** By statute, some states expressly permit backdating of claims under certain circumstances. For example, California authorizes the backdating of an unemployment insurance claim when the filing is delayed for good cause. *Cal.Code Regs.* tit. 22, § 1326–10 (1982). *See also Wang v. California Unemployment Ins. Appeals Bd.*, 225 Cal.App.3d 412, 275 Cal.Rptr. 237, 240–241 (1990) (holding that "good cause" for delayed filing should be defined broadly; claimant may prevail upon showing detrimental reliance on "misleading, incomplete, or erroneous advice" by Employment Development Department personnel).

Additionally, Pennsylvania expressly permits up to 52 weeks of backdating when a claimant is prevented from filing timely through no fault of his own. 34 Pa.Code § 65.33(a) (1975). Predating may exceed 52 weeks in instances of gross neglect or misrepresentation rising to the level of fraud. *See Kear v. Pennsylvania Unemployment Compensation Bd.*, 40 Pa.Cmwlth. 346, 397 A.2d 468, 469 (1979).